UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 06-509-GWU


ALPHIA M. LEWIS,                                                    PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


**INTRODUCTION**

Alphia Lewis brought this action to obtain judicial review of an unfavorable

administrative decision on her application for Disability Insurance Benefits (DIB).

The case is before the Court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled.  If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical or mental impairment(s)?  If yes, proceed to Step 3.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities?  If yes, proceed to Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6.    See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  See 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. Section 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1)

3

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions  .  .  .  or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." <u>Abbott v. Sullivan</u>, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  <u>Ibid</u>.  In

such cases, the agency may be required to consult a vocational specialist.  <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley  v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The Administrative Law Judge (ALJ) concluded that Lewis, a 48 year-old former certified nurse's assistant with a high school equivalent education, suffered from impairments related to an anxiety/depressive disorder.  (Tr. 16, 20-21).  While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of work at all exertional levels.  (Tr. 19-20).  Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Tr. 21-22).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Id.).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Jackie Rogers

included such non-exertional limitations as (1) a need to avoid work requiring one to maintain attention and concentration for extended time periods; (2) a need to avoid more than minimal contact with the general public; and (3) being absent or tardy from work one to two days a month.  (Tr. 583).  In response, the witness identified a significant number of jobs in the national economy which could still be performed.  (Id.).  Therefore, assuming that the vocational factors considered by Rogers fairly characterized the condition of Lewis, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The hypothetical question fairly characterized Lewis' mental condition. Psychologist Christopher Catt examined the plaintiff and diagnosed malingering, a dysthymic disorder and bereavement.  (Tr. 272).  The only mental restriction indicated was a "slight" restriction in maintaining attention and concentration.  (Tr. 273).  The hypothetical question was fully consistent with this limitation.  Dr. Robert Eardley also examined the claimant and indicated that her mental problems would not preclude her ability to understand, remember and carry out instructions.  (Tr. 220).  Psychologists Stephen Scher (Tr. 275) and Laura Cutler (Tr. 350), non-examining medical reviewers, each opined that the plaintiff did not even suffer from a "severe" mental impairment.[1]  The plaintiff sought treatment for her mental

_____

[1]Psychologists Robert Ross (Tr. 221-222) and Lea Perritt (Tr. 240-241), non-examining reviewers, each identified mental limitations which were not explicitly presented to the vocational expert.  These opinions would be offset and outweighed by

problems at the Kentucky River Comprehensive Care Center.  (Tr. 321-348).  Upon termination of services, the claimant's Global Assessment of Functioning (GAF) was rated at 73.  (Tr. 321).  Such a GAF indicates the existence of no more than "slight" psychological impairment consistent with the ALJ's findings, according to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision) (DSM-IV-TR), p. 34.  These reports provide substantial evidence to support the administrative decision.

Dr. Anita Cornett, a treating physician at Christian Healthcare, identified the existence of extremely severe mental limitations on a Mental Medical Source Statement.  (Tr. 561-563).  The ALJ rejected this opinion as binding.  (Tr. 17).  This action was appropriate.  Review of the Christian Healthcare treatment notes reveals that the plaintiff was primarily seen for physical problems rather than mental ones.  (Tr. 289-317, 498-512).  The main treating source for the claimant's mental problems was Kentucky River, where considerably less severe psychological impairment was indicated.  Dr. Eardley and Catt, as well as the reviewers, all indicated that the mental condition of Lewis was considerably less severe than did Dr. Cornett.  As mental health specialists, their opinions were entitled to greater weight on this question of mental health than that of Dr. Cornett, a family practitioner, since the administrative regulations provide that "generally we give

_____

the other evidence of record.

more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist." 20 C.F.R. Section 404.1527(d)(5).   Therefore, the ALJ properly disregarded Dr. Cornett's opinion concerning mental limitations.

The ALJ also properly concluded that Lewis did not suffer from any physical impairments.  Dr. Mark Burns examined Lewis and opined that she was not limited in her ability to perform such activities as sitting, standing, moving about, lifting, carrying, handling objects, hearing, seeing, speaking and traveling.  (Tr. 265).  Dr. Aissa Alexeeva, another examiner, also found no physical limitations.  (Tr. 214).  Dr. John Rawlings, a medical reviewer, reported that the plaintiff's physical problems were "less than severe."  (Tr. 349).  Such treating and examining sources as the Gastroenterology Associates of Hazard (Tr. 164-210), the staff at the Cutshin Clinic (Tr. 259-261), the staff at Mary Breckinridge Healthcare (Tr. 365-497), and the staff at the Leslie County Health Department (Tr. 513-540) did not impose more severe physical limitations than those found by the ALJ.  These reports provide substantial evidence to support the administrative decision.

Dr. Cornett also completed a Medical Source Statement concerning Lewis' ability to perform physical activities and again identified extremely severe limitations. (Tr. 318-320).  The ALJ rejected this opinion because he did not believe it was well-supported by objective medical data.  (Tr. 17).  This action appears appropriate.  Dr.

06-509  Lewis

Rawlings reviewed the record and spherically opined that Dr. Cornett's limitations were not well-supported by objective medical data.  (Tr. 349).  An x-ray of the plaintiff's lumbar spine revealed that the bony structures were intact.  (Tr. 315).  Dr. Burns reported that his orthopedic examination was within normal limits.  (Tr. 265). Dr. Alexeeva noted normal muscle bulk, tone and power in the four extremities and sensation was intact.  (Tr. 213).  Therefore, the ALJ properly discounted this opinion.     Lewis argues that the ALJ erred by failing to provide specific rationale explaining why her pain complaints were found not to be credible.  However, the ALJ cited the lack of objective medical evidence supporting the plaintiff's claims and the opinions of the numerous examining and reviewing physicians for this finding. (Tr. 18-20).  Therefore, the Court must reject the claimant's argument.

The undersigned concludes that the administrative decision should be affirmed.  Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 26th day of September, 2007.



**Signed By:**

_G. Wix Unthank_

**United States Senior Judge**

11